**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **PATENT RESEARCH INSTITUTE, L.L.C.** § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | Civil Action No. 2:11-cv-154 | |
| § | | |
| **L'OREAL USA, INC.** § | | |
| § | | |
| Defendant. § | **JURY TRIAL DEMANDED** | |

## COMPLAINT

### I.  NATURE OF THE CASE

1. This is an action for false patent marking under Section 292 of the Patent Act (35 U.S.C. § 292), which provides that any person may sue to recover the civil penalty for false patent marking. Plaintiff Patent Research Institute, L.L.C. brings this *qui tam* action on behalf of the United States of America against Defendant, L'Oreal USA, Inc. ("L'Oreal").

### II. PARTIES

2. Plaintiff Patent Research Institute, L.L.C. is a Texas limited liability company with its principal place of business in Houston, Texas.

3. Defendant L'Oreal USA, Inc. ("L'Oreal") is a Delaware corporation having its principal place of business at 575 Fifth Avenue, New York, New York, 10017.

### III. JURISDICTION AND VENUE

4. The Court has jurisdiction of this action under 28 U.S.C. §§ 1331 and 1338(a).

5. The Court has personal jurisdiction over L'Oreal. L'Oreal has continuously conducted business within the State of Texas. L'Oreal has continuously offered for sale

and sold, marked, and advertised the products that are the subject of this Complaint in the United States, the State of Texas, and the Eastern District of Texas.

6. Venue is proper in this district under 28 U.S.C. §§ 1391(b), 1391(c), and 1395(a).

## IV. FACTS

7. L'Oreal has marked and continues to mark its L'Oreal Kids shampoo products (the "Falsely Marked Products") with inapplicable patents, including U.S. Patents Nos. D398,503 and D398,530 (the "Falsely Marked Patents"). Such false marking by L'Oreal includes (a) marking the Falsely Marked Patents upon the Falsely Marked Products, (b) affixing the Falsely Marked Patents to the Falsely Marked Products and (c) using the Falsely Marked Patents in advertising in connection with the Falsely Marked Products.

8. U.S. Patents Nos. D398,503 (attached hereto as Exhibit 1) and D398,530 (attached hereto as Exhibit 2) have no application to the Falsely Marked Products. These patents are design patents that disclose certain design characteristics that the Falsely Marked Products lack. For example, Patent No. D398,503 covers a design for a "tool holder" that has no relevance to the Falsely Marked Products or their containers. Similarly, Patent No. D398,530 covers a design for a cap that has a cylindrical stopper that fits inside the hole contained in the lower part of the base of the cap. In contrast, the containers of the Falsely Marked Products do not possess such a stopper but rather have an upper cap connector that fits outside and around the protruding hole opening on the base of their caps. In addition, the containers of the Falsely Marked Products employ a type of connector to connect their caps to their cap bases that is different than the connector disclosed in Patent No. D398,530 and which is not covered by Patent No. D398,530.

9. It was a false statement for L'Oreal to mark the Falsely Marked Products with inapplicable patents.

10. L'Oreal is a large, sophisticated company. L'Oreal has, and/or regularly retains, sophisticated legal counsel.

11. L'Oreal has many years of experience applying for patents, obtaining patents, and licensing patents.

12. L'Oreal knew that the Falsely Marked Products were not covered by the Falsely Marked Patent.

13. L'Oreal knew that it was a false statement to mark the Falsely Marked Products with an inapplicable patent.

14. L'Oreal knew that its use of the Falsely Marked Patent gave it a competitive advantage and would increase its revenue.

## V.  INJURY IN FACT TO THE UNITED STATES

15. L'Oreal's false marking has injured the United States and continues to do so.

16. L'Oreal's false marking has caused injuries to the sovereignty of the United States arising from L'Oreal's violations of federal law, specifically, L'Oreal's violations of 35 U.S.C. § 292(a).

17. L'Oreal's false marking has caused proprietary injuries to the United States and continues to do so.

18. The marking and false marking statutes exist to give the public notice of patent rights. Congress intended the public to rely on marking as a ready means of discerning the status of intellectual property embodied in an article of manufacture or design, such as the

Falsely Marked Products.

19. Federal patent policy recognizes an important public interest in permitting full and free competition in the use of ideas which are, in reality, a part of the public domain-such as those described in the Falsely Marked Patents.

20. Congressional interest in preventing false marking was so great that Congress enacted 35 U.S.C. §292(a) which seeks to encourage private parties to enforce the statute. By permitting members of the public to bring *qui tam* suits on behalf of the Government, Congress authorized private persons such as Plaintiff to help control false marking.

21. L'Oreal's acts of false marking deter innovation and stifle competition in the marketplace for the following reasons: (a) if an article that is within the public domain is falsely marked, potential competitors may be dissuaded from entering the same market; (b) false marks may also deter scientific research when an inventor sees a mark and decides to forego continued research to avoid possible infringement; and (c) false marking can cause unnecessary investment in design to avoid presumed patent infringement or costs incurred to analyze the validity or enforceability of a patent whose number has been marked upon a product with which a competitor would like to compete.

22. L'Oreal's false marking misleads the public into believing that the Falsely Marked Patents give L'Oreal control of the Falsely Marked Products, and places the risk of determining whether the Falsely Marked Products are controlled by such patents on the public rather than on L'Oreal, thereby increasing the cost to the public of ascertaining whether L'Oreal in fact control the intellectual property embodied in the Falsely Marked Products.

23. In each instance where L'Oreal has represented that the Falsely Marked Products

are protected by the Falsely Marked Patents, a member of the public desiring to participate in the market for products similar to the Falsely Marked Products must incur the cost of determining whether the involved Falsely Marked Patents are valid and enforceable. Failure to take on the costs of a reasonably competent search for information necessary to interpret each Falsely Marked Patent, investigation into prior art and other information bearing on the quality of the patents, and analysis thereof can result in a finding of willful infringement, which may treble the damages a potential infringer would otherwise has to pay.

24.     L'Oreal's false marking also creates a misleading impression that the Falsely Marked Products are technologically superior to other available products, as articles bearing the term "patent" may be presumed to be novel, useful, and innovative.

25.     Every person or company in the United States is a potential entrepreneur with respect to the process, manufacture, or composition of matter described in the Falsely Marked Patents. Moreover, every person or company in the United States is a potential competitor of L'Oreal's with respect to the Falsely Marked Products marked with the Falsely Marked Patents.

26.     Each Falsely Marked Product and advertisement thereof is likely to discourage or deter members of the public from commercializing a competing product even though the Falsely Marked Patents has no legal authority to prevent any person or company in the United States from competing with L'Oreal in commercializing such products.

27.     L'Oreal's marking of the Falsely Marked Products and advertising thereof may stifle competition with respect to similar products to an immeasurable extent, thereby causing harm to the United States in an amount that cannot be readily determined.

28.     L'Oreal has wrongfully and illegally advertised a patent monopoly that it does not possess and, as a result, has benefited by increasing or maintaining its market power or commercial success with respect to the Falsely Marked Products.

29.     Each individual false marking (including each time an advertisement with such marking is accessed on the internet), is likely to harm the public. Thus, each such false marking is a separate offense under 35 U.S.C. § 292(a).

30.     Each offense of false marking creates a proprietary interest of the United States in the penalty that may be recovered under 35 U.S.C. § 292(b).

31.     For the reasons stated in paragraphs 7 through 30 above, L'Oreal's false marking has caused injuries to the sovereignty of the United States arising from L'Oreal' violations of federal law, and has caused proprietary injuries to the United States.

## VI. CLAIM

32.     For the reasons stated in paragraphs 7 through 31 above, L'Oreal has violated 35 U.S.C. § 292 by falsely marking the Falsely Marked Products with intent to deceive the public.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following:

A.      An accounting of the number, sales, and revenue of any Falsely Marked Products;

B.      A judgment in favor of Plaintiff finding that L'Oreal has falsely marked products in violation of 35 U.S.C. § 292 and imposing a civil fine of $500 per each Falsely Marked Product and false marking offense or an alternative amount, as set by the Court, one-half of any such award to be paid to the United States;

C.       An award of pre-judgment and post-judgment interest on any monetary award;

D. An injunction prohibiting L'Oreal and its officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them from violating 35 U.S.C. § 292;

E. An award of attorneys fees and costs, and other expenses and an enhancement of damages and penalties; and

F. Such other and further relief to which Plaintiff is entitled.

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

Dated: March 9, 2011

Respectfully submitted,

/s/ Stuart M. Nelkin
Stuart M. Nelkin
Texas Bar No. 14884000
Carol Nelkin
Texas SBN: 14883500
Jay P. Nelkin
(Pro Hac Vice Motion to be filed)
NELKIN & NELKIN, P.C.
5417 Chaucer Drive
Houston, Texas 77005
(713) 526-4500 Telephone
(281) 825-4161 Facsimile
*Attorneys for Plaintiff*